Joseph A. Zwetchkenbaum and Morrisa B. Zwetchkenbaum, et al. * v. Commissioner. Zwetchkenbaum v. Commissioner
Docket Nos. 87571, 87579, 87580, 90553, 90556, 90559.
United States Tax Court
T.C. Memo 1962-283; 1962 Tax Ct. Memo LEXIS 24; 21 T.C.M. (CCH) 1493; T.C.M. (RIA) 62283; November 29, 1962
*24 James T. Lodge, Esq., and Walter F. Gibbons, Esq., for the petitioners. J. Frost Walker, Jr., Esq., and John R. Berman, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes as to petitioners for the year ended December 31, 1957, as follows: Docket
No.
Petitioner
Deficiency
87571
Joseph A. Zwetchkenbaum and
Morrisa B. Zwetchkenbaum
$ 3,659.40
87579
Robert Kaplan and Lorrain
Kaplan
2,773.15
87580
Sheldon Kaplan and Harriet
Kaplan
3,038.99
90553
Edward Zwetchkenbaum and
Matilda Zwetchkenbaum
11,088.87
90554
Robert G. Levye and Jose-
phine K. Levye
1,189.57
90555
Matilda Zwetchkenbaum,
Guardian for Susan Zwetch-
kenbaum
1,219.84
90556
Gussie Kaplan
8,013.46
90559
Barbara Zwetchkenbaum Pop-
lack
1,205.56
The issue is whether petitioners are entitled to deduct the unrecovered cost of leasehold improvements to property in the year their partnership vacated the property without awaiting the termination of the leases. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Edward *25 and Matilda Zwetchkenbaum, Robert G. and Josephine K. Levye, Matilda Zwetchkenbaum, guardian for Susan Zwetchkenbaum, Gussie Kaplan, and Barbara Zwetchkenbaum Poplack filed their income tax returns for 1957 with the director of internal revenue for the district of Massachusetts. Petitioners Joseph A. and Morrisa B. Zwetchkenbaum, Robert and Lorrain Kaplan, and Sheldon and Harriet Kaplan filed their income tax returns for 1957 with the director of internal revenue for the district of Rhode Island. Petitioners or their husbands were, at all times here material, partners in New York Lace Store, which specialized in retail women's and children's wear with its principal place of business in Pawtucket, Rhode Island. New York Lace Store (hereinafter called the partnership) filed its partnership income tax return for the year ended December 31, 1957 with the director of internal revenue for the district of Rhode Island. The partnership is the lessee of premises located at 14-30 Broad Street in Pawtucket, Rhode Island, known as the Slater Building, under indenture of lease dated November 1, 1946, for a term of 25 years, beginning with the first day of June 1947 and ending on the first day *26 of June 1972, at an annual rental of $58,700 up to December 1, 1949, and $61,800 during the remainder of the lease. A portion of these premises is subleased by the partnership to Adams Drug Company, Inc., under a lease which expires May 31, 1972. The partnership is the lessee of the first floor and basements, together with additional space in the Taylor Building, located at 32-42 Broad Street in Pawtucket, Rhode Island, under indenture of lease dated May 28, 1948, which commenced July 15, 1950, for a period of 21 years and 10 1/2 months, terminating May 31, 1972. The annual rental under the lease is $26,000 per year. A portion of these premises is subleased by the partnership to Almac's, Inc., a retail grocery, under a lease which expires June 14, 1966. The partnership is the sublessee from Almac's, Inc., for a period ending June 14, 1966, of the second and third floors of premises known as the Whipple Building and of premises known as the Whipple Garages, located adjacent to the other leased premises. The partnership made various improvements prior to 1957 on the premises occupied by it as a retail store under the aforementioned leases and sublease. The improvements were general *27 in nature and constituted a permanent part of the property. The cost, depreciation allowed or allowable prior to January 1, 1957, and the remaining cost are allocated as follows: Depreciation
allowed
Remaining
Building and section
Cost
or allowable
cost
Whipple Building
$ 29,270.44
$ 8,078.99
$ 21,191.45
Whipple Garages
15,120.90
4,173.04
10,947.86
44,391.34
12,252.03
32,139.31
Taylor & Slater Buildings
Primrose Room and Teen Shop
17,586.50
6,610.92
10,975.58
Basements
6,311.00
2,371.48
3,939.52
Customers' lavatory
5,092.00
1,915.31
3,176.69
Employees' room and lavatory
6,737.64
2,533.16
4,204.48
Store front and windows, Slater Building
39,439.00
14,874.90
24,564.10
Store front and windows, Taylor Building
13,086.00
4,936.80
8,149.20
Front display windows
9,187.43
3,466.08
5,721.35
Miscellaneous walls, fire doors, construction, floors
52,303.66
19,725.68
32,577.98
149,743.23
56,434.33
93,308.90
Total
$194,134.57
$68,686.36
$125,448.21
The improvements on the premises referred to as the Whipple Building represented expenditures for newly constructed office space, air conditioning, heating, *28 sprinklers, and lavatories. These offices were occupied by the merchandising, accounting, and advertising departments and various buyers of the partnership. The improvements on the premises referred to above as the Whipple Garages consisted of expenditures for new walls, tile floors, heating and air conditioning equipment, sprinklers, and decorations. The improvements referred to as the Primrose Room and Teen Shop involved expenditures to construct a retail selling area with luxurious surroundings and lighting in order to provide space for the marketing of a more expensive line of apparel. These improvements consisted of paneled walls, finished columns, curved stairways, false ceilings, spotlighting and indirect lighting, and a curved separate entrance. The alterations were made to attract a higher quality trade. The improvements referred to above as basements represented expenditures to convert basement areas, primarily that in the Taylor Building, to a receiving and marking room to be used in the handling of merchandise sold by the partnership on the premises on Broad Street. The expenditures included payments for stairways and chutes, walls and partitions, air conditioning *29 duct work, and lighting fixtures. The improvements referred to as customers' lavatory consisted of facilities for the use of customers on the second floor of the Slater Building. The expenditures designated as employees' room and lavatory were for the construction of facilities for the use of approximately 100 full-time and part-time employees on the second floor of the Taylor Building. These expenditures were for lavatory fixtures, plumbing and installation and partitioning to construct the employees' lavatory, and partitioning and lighting to construct the employees' recreation room. The improvements referred to as store front and windows, Slater Building, and store front and windows, Taylor Building, involved expenditures which were made to construct a store front and display windows to be used in the conduct of business of the partnership. The expenditures were for changes in the store front and lighting as well as an entrance and entrance lobby from Broad Street. These improvements were made to achieve an effective presentation of merchandise and to make the store front conform with other store fronts in the area. The improvements referred to as front display windows consisted *30 of converting all the display windows in the front of the store to the type of display window considered to be most effective in presenting and merchandising the type of goods which the partnership was selling. They included new lighting and decoration of the display areas. The items referred to as miscellaneous were improvements in the nature of tile floors, sprinkler systems, fire doors, air conditioning, and lighting. The majority of these improvements were on the main floor of the Taylor and Slater buildings. The improvements were of a type used in a store specializing in women's and children's wear. The expenditures involved were incurred while integrating the various leased areas into a single store. In March 1957, the retail business of the partnership was moved from the premises described above to a location at 6 Lonsdale Avenue, a suburban shopping center, where the partnership has since carried on a store specializing in retail women's and children's wear. The move from downtown Pawtucket to a suburban area was necessitated by a decline in the partnership's volume of business in its old location beginning in 1953 and the general deterioration of the downtown area as a *31 retail market. No retail business has been carried on by the partnership on the premises described above since 1957. The partnership has used a portion of the second floor of the Taylor and Slater buildings for the storage of merchandise. The partnership has been unsuccessful in efforts to terminate the leases and sublease described above. The partnership has likewise been unsuccessful in attempting to sublease the premises as a retail store despite continuing effort to do so. Such facilities are not in demand due to the trend of retail operations away from downtown Pawtucket. Mead Distributors, Inc., 38.9 percent of the stock of which is owned by some of the petitioners, has accommodated the partnership by using the portion of the leasehold known as the Whipple Garages and a potion of the Taylor and Slater buildings solely as a warehouse since late 1960 under an oral agreement which calls for payments at the rate of $1,500 per year. Mead Distributors, Inc., has approximately 10 or 12 employees on the premises who make some use of the employee facilities. The portions known as the Primrose Room and Teen Shop are vacant. The partnership claimed a deduction for the unrecovered *32 cost of the leasehold improvements in 1957 and petitioners claimed their proportionate share thereof as partners on their income tax returns for 1957. Petitioners did not abandon the improvements by the end of 1957 and had no intention to do so. The leasehold improvements made by petitioners are of a general nature which can be used in future utilization of the premises under the leases and have not been permanently abandoned by petitioners. Opinion Leasehold improvements are ordinarily depreciable over the term of the lease, ; ; ; or of their anticipated useful life, ; , affd. (C.A. 6, 1939), affd. [39-2] . Neither had terminated here up to the time of the trial in 1962. Petitioners admittedly have so far been unable to put the assets in question to the fullest economic use, but neither have the improvements been abandoned, retired, nor permanently *33 withdrawn. ; . Not only has there been no conclusive sublease which precludes some economic benefit from the improvements, but petitioners are still actively searching for a subtenant with a use for the remodelled premises in their present condition. Petitioners' principal leases do not expire until 1972. If they were successful in finding a subtenant who could make use of the premises as remodelled, and if, in the meantime, the cost of the improvements had been entirely written off, the proper tax treatment would present unnecessary difficulties. Either the deducted cost of the improvements would have to be restored to income, see, e.g., , affirmed per curiam (C.A. 2, 1936), certiorari denied , or the rent received from the subtenant would represent an unreal inclusion in income of an amount representing return of capital. On the other hand, deductions for depreciation can now be taken in the meantime. On the record, *34 we cannot find that petitioners' sublease had entirely lost its value, cf. , or that "no value whatever remained." Cf. , affd. (C.A. 4, 1943). Instead, it seems to us an extended period remains within which petitioners may realize the possibility of utilizing the lease and the accompanying improvements. Cf. , affd. (C.A. 3, 1943). Accordingly, the deduction for a loss in the current year must be denied. ; . As for the claim of obsolescence, no more need be said than that this is a type of deduction which can under no circumstances be permitted in a single year. ; , on appeal (C.A. 9, May 21, 1962). For the reasons stated, and as to the years here involved, Decisions will be entered for the respondent. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Robert Kaplan and Lorrain Kaplan, Docket No. 87579; Sheldon Kaplan and Harriet Kaplan, Docket No. 87580; Edward Zwetchkenbaum and Matilda Zwetchkenbaum, Docket No. 90553; Robert G. Levye and Josephine K. Levye, Docket No. 90554; Matilda Zwetchkenbaum, Guardian for Susan Zwetchkenbaum, Docket No. 90555; Gussie Kaplan, Docket No. 90556; and Barbara Zwetchkenbaum Poplack, Docket No. 90559.↩